UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY B. WILLIAMS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:04-CV-597 RM |
| ) | |
| FULTON COUNTY SHERIFF, *et al.*, ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Anthony Williams is a prisoner committed to the Indiana Department of Correction whose complaint deals with events that occurred while he was confined at the Fulton County Jail. The court screened the complaint pursuant to 28 U.S.C. § 1915A, dismissed several claims and defendants, and allowed Mr. Williams to proceed against the Fulton County Sheriff for damages on his claim that he was not protected from being assaulted by another inmate. Mr. Williams amended his complaint by interlineation to sue the defendant in his "individual and municipality capacity." (Motion for Leave to Amend at p. 1). In its order granting him leave to amend, this court construed Mr. Williams's motion to amend as a request to sue the defendant in his individual and official capacities.

Sheriff Roy Calvert moves for summary judgment, pursuant to FED. R. CIV. P. 56; Mr. Williams has responded. For the reasons that follow, the court grants Sheriff Calvert's summary judgment motion.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes

>v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324.
>
>    . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio *Corp.*, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

In paragraph thirty of his complaint, Mr. Williams alleges that he "was involved in a fight after repeated attempts to get moved for his safety," and that an inmate "jumped" him after he "gave Jail Officers several request[s] to be moved." When it screened the complaint, giving Mr. Williams the benefit of the inferences to which he is entitled at the pleadings stage, the court construed this as a claim that Sheriff Calvert failed to protect him from being assaulted by another inmate.

In support of his summary judgment motion, Sheriff Calvert submits his affidavit, Mr. Williams's deposition, and extensive documentary evidence. Mr. Williams responds with his own affidavit.

Sheriff Calvert moves to strike three paragraphs from Mr. Williams's affidavit because they are conclusory and speculative, and don't appear to be based on personal knowledge. The court declines to strike these paragraphs, but will disregard any inadmissible evidence presented in Mr. Williams's affidavit.

The parties' submissions establish that Mr. Williams was booked into the Fulton County Jail on January 29, 2003, and was transferred to Cell Block 6 on March 5. Sheriff Calvert wasn't involved in the decision to place Mr. Williams in Cell Block 6. Mr. Williams stated in his deposition that he sent written messages to the sheriff and jail officials Steve Reese and Roy Talbert complaining about conditions in Cell Block 6 and asking to be moved.[1] Mr. Williams placed these messages on the bars of his cell and they were picked by by "Big Mike and Al and whoever was working." (Williams deposition at p. 26). In his affidavit, Mr. Williams says he sent a message to "Chief Jailer Steven Reese," another message to Steven Reese and Al Graham, and a third message to Sheriff Calvert.

Sheriff Calvert states in his affidavit that the jails' day-to-day operations are supervised by a jail commander or chief jailer, "who makes decisions regarding the assignment of inmates to housing units, the provision of necessary services and the general security of the jail . . . [Sheriff Calvert] . . . had no personal involvement whatsoever in the assignment of Anthony Williams from a holding cell to cellblock 6." (Calvert Affidavit at p. 1). Sheriff Calvert also states in his affidavit that he never received a message from Mr. Williams expressing concerns for his safety or asking that he be moved out of Cell Block 6, and that he never received information from any other source that Mr. Williams wanted to be transferred or was having problems in Cell Block 6.

On March 9, Mr. Williams was sitting in the dayroom when he heard inmate LeRoy Blount say something to or about him. Mr. Williams confronted Mr. Blount,

---

[1] In its screening order, the court noted that "Mr. Williams seeks to sue the Fulton County Jail Staff. But he must name persons he wishes to sue by name. If Mr. Williams wants to sue any officer of the Fulton County Jail, other than the Sheriff, he must amend his complaint to identify that officer by name." (Memorandum and order of March 2, 2005 at p. 10). Mr. Williams did not seek leave to amend his complaint to add additional defendants, leaving Sheriff Calvert as the sole defendant.

3

and says that Mr. Blount threatened him. Mr. Williams then struck Mr. Blount in the face, breaking his jaw and knocking him to the ground. Mr. Williams says he headbutted another inmate in the chin about twenty minutes later. Jail officials charged Mr. Williams with battery on Mr. Blount, and Mr. Williams pleaded guilty to the charge.

The Eighth Amendment protects convicted prisoners from cruel and unusual punishments; the rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." Martin v. Tyson, 845 F.2d 1451, 1457 (7th Cir. 1988).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991). Jail officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. at 833. "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834.

Deliberate indifference in such circumstances is defined as "criminal recklessness," Farmer v. Brennan, 511 U.S. at 839-840, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992), citing McGill v. Duckworth, 944 F.2d at 347.

4

The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. at 836. A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1986). To prevail against Sheriff Calvert, Mr. Williams must show that Sheriff Calvert was aware of facts that put him on notice that leaving him in Cell Block 6 would expose him to a substantial rusk of serious harm, and that he was actually harmed.

Mr. Williams sues Sheriff Calvert for damages in his individual capacity. Section 1983 creates a cause of action for damages based on personal liability. A person cannot be held liable under § 1983 unless the person was personally involved in the alleged wrongdoing. A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains, Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to § 1983 actions. Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993).

The complaint suggested that Sheriff Calvert ignored Mr. Williams's "repeated attempts to get moved for his safety," resulting in his being attacked and injured by another inmate. The parties' summary judgment submissions establish, however, that Mr. Williams was not attacked by another inmate; rather he attacked another inmate. The injury Mr. Williams complains of was not

5

physical injury to him,[2] but rather that as a result of remaining in Cell Block 6, he committed a crime against another inmate, causing him to be convicted and spend additional time in prison.

This case doesn't fit into the normal "failure to protect" analysis. Mr. Williams admits in his deposition that he was the aggressor in his fight with Mr. Blount, and that he threw the first and only blow in the fight. It is difficult to extend Mr. Williams's Eighth Amendment right to be protected from being assaulted by another inmate to a duty by Sheriff Calvert to prevent him from being harmed by a criminal conviction resulting from his attack on another inmate. But even assuming that Sheriff Calvert's constitutional duty to Mr. Williams extended to protecting him from committing a crimes against other inmates while in jail, and giving him the benefit of all permissible inferences, Sheriff Calvert still is entitled to summary judgment on his individual capacity claims.

For Mr. Williams to prevail in his individual capacity claim, Sheriff Calvert must have been aware of facts from which the inference could be drawn that a substantial risk of serious harm to Mr. Williams existed — or in this case, that there was a substantial risk that another inmate would provoke Mr. Williams into inflicting serious harm on him — and he must have drawn the inference. Mr. Williams says in his deposition that he sent messages to Sheriff Calvert and nondefenant jail officials advising them of problems on the unit and asking to be moved out of Cell Block 6. But Sheriff Calvert states in his affidavit that he never received a request from Mr. Williams to be moved out of Cell Block 6, and that he never received information from any other source that Mr. Williams wanted to be transferred or was having problems in Cell Block 6. Mr. Williams concedes in his

---

[2] Except for minor injuries to his hand and head from his attacks on other inmates, Mr. Williams suffered no physical harm.

deposition that he has no evidence that Sheriff Calvert ever received his request to be moved. (Williams Deposition at pp. 49-50).

Accordingly, the court must assume for purposes of dealing with this motion that Mr. Williams sent written messages about his security concerns to jail officials, including Sheriff Calvert. But it must also assume for the purposes of today's ruling that Sheriff Calvert never saw the messages, was not advised of Mr. Williams's problems from any other source, and was unaware of his problems.

Because the defendant met his initial obligation under FED. R. CIV. P. 56, of pointing to an element of the claim he believes Mr. Williams cannot prove, the burden shifted to Mr. Williams to come forth with evidence sufficient that, if viewed as fully in his favor as reasonable, would allow a factfinder to decide that element in his favor. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because Mr. Williams hasn't come forth with admissible evidence that Sheriff Calvert had actual knowledge of the problems he was having on Cellblock 6, he hasn't met his burden of coming forth with evidence which, if viewed reasonably in his favor, would allow a factfinder to conclude that Sheriff Calvert was aware of problems he was having on Cellblock 6, and was deliberately indifferent to a danger to Mr. Williams.

Mr. Williams also sues Sheriff Calvert in his official capacity. An official capacity damage claim against a municipal official "is not a suit against the official as an individual; the real party in interest is the entity." Wilson v. Civil Town of Clayton, Indiana, 839 F.2d 375, 382 (7th Cir. 1988). Municipalities cannot be held liable for damages under § 1983 unless a governmental policy or custom caused the alleged violation of the plaintiff's rights. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). A plaintiff may prevail by proving the existence

7

of an express municipal policy that caused the alleged violation of his rights, Baxter v. Vigo County School Corp., 26 F.3d 728, 734 (7th Cir. 1994); by establishing that the person who committed the constitutional tort was an official with policy-making authority, City of St. Louis v. Parprotenik, 485 U.S. 112, 123 (1988); or by establishing the existence of a practice or custom so widespread or persistent that it rises to the level of a policy that can fairly be attributed to the municipality. Jett v. Dallas Independent School District, 491 U.S. 701 (1989).

To prevail in an official capacity damage claim against Sheriff Calvert, Mr. Williams must prove the existence of an express municipal policy or establish the existence of a widespread or persistent practice or custom. To establish a widespread practice or custom, he must establish that Sheriff Calvert knew his subordinates were acting improperly, yet did nothing to solve the problem. Dye v. Wargo, 253 F.3d 296, 299 (7th Cir. 2001). "'Considerably more proof than [a] single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the unconstitutional deprivation.'" Id. at 299, quoting Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985).

The record before the court contains no admissible evidence that Sheriff Calvert promulgated an express formal policy or that he informally condoned leaving prisoners in housing units in which they had complained that they were in danger. Accordingly, Mr. Williams has not met his burden of proof on this issue, and Sheriff Calvert is entitled to summary judgment on the official capacity claims against him.

For the foregoing reasons, the court DENIES defendant Calvert's motion to strike paragraphs 5, 10, and 11 from Mr. Williams's affidavit (docket #99),

8

GRANTS his motion for summary judgment (docket #76), and DIRECTS the clerk to enter judgment in favor of the defendants and against the plaintiff.

SO ORDERED.

ENTERED: August  11 , 2006

                                            /s/ Robert L. Miller, Jr.
                                            Chief Judge
                                            United States District Court